IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MAINE COMMUNITY HEALTH OPTIONS,

                Plaintiff,                OPINION AND ORDER

v.

                                              18-mc-0009

WALGREEN CO.,

                Defendant.

---

Maine Community Health Options ("Health Options") is involved in an ongoing arbitration proceeding in this district against Navitus Health Solutions, LLC ("Navitus"). The arbitration concerns Health Options's claim that Navitus overcharged it for pharmaceutical drugs sold through Navitus's retail pharmacy network to Health Options's members. On August 16, 2018, Health Options served Walgreen Co. ("Walgreens") with a third-party subpoena issued by the arbitration panel, requiring Walgreens's attendance and production of documents at an arbitration hearing in Madison. Walgreens has refused to comply with the subpoena absent a court order, so Health Options is here in this court seeking one. Walgreens has objected, arguing that the arbitral subpoena is unenforceable because Walgreens is neither subject to this court's personal jurisdiction nor within the territorial reach of the court's subpoena power under Fed. R. Civ. P. 45. Walgreens also objects to the cost of complying with the subpoena, and asks that if this court orders compliance, then Health Options should pay Walgreens's costs up front.

Because I find that this court has personal jurisdiction over Walgreens and that Walgreens resides within 100 miles of where the arbitration hearing will be held, I am granting Health Options's motion for enforcement of the arbitration subpoena. I am denying

Walgreens's request that Health Options be ordered to pay the costs of compliance up front because Walgreens has not supported its request with any evidence showing how much it actually will cost to provide the requested data.

BACKGROUND

Health Options is a Maine-based non-profit community health plan established under the Affordable Care Act that provides health insurance benefits to more than 40,000 members in Maine. Navitus is a pharmacy benefit manager headquartered in Wisconsin. Health Options has established that there is complete diversity between the parties and the amount in controversy exceeds $75,000. *See* dkt. 18.

Health Options commenced the underlying arbitration in March 2018, seeking reimbursement of millions of dollars that it says Navitus improperly charged for pharmaceutical drugs sold through Navitus's retail pharmacy network to Health Options's members. Under a contract between Health Options and Navitus, Navitus had agreed to charge Health Options either the parties' negotiated rate or the retail pharmacy's "usual and customary" (U&C") price for pharmaceuticals, whichever was less. The contract defined "usual and customary" as "any minimum price[] charged by [a pharmacy] in a cash or uninsured transaction." According to Health Options, Navitus used inflated U&C prices charged by its retail pharmacies when it calculated the amounts that it charged to Health Options.

Walgreens is one of the retail pharmacies in Navitus's network. In discovery, Health Options requested from Navitus specific data from Walgreens and other pharmacies within its network concerning the U&C price charged by these pharmacies for the pharmaceuticals

ultimately covered by Health Options. According to Health Options, this data is relevant and material to discerning the amount by which Health Options overpaid Navitus for pharmacy claims that were based on inflated U&C prices. Navitus claims that it does not have this data in its possession.

This led Health Options to ask the arbitration panel to issue a subpoena to the pharmacies for the requested information. On August 13, 2018, the arbitration panel issued a subpoena to "Walgreen Co.," directing it "to testify and give evidence" before the arbitrators at a yet-to-be-determined location in Madison and to bring the following documents:

1. All versions of all directories and/or lists reflecting discount prices offered to Prescription Savings Club enrollees in Maine or New Hampshire from Jan 1, 2014 until June 30, 2016;

2. Records of all transactions involving a cash-paying or uninsured customer at any Walgreens pharmacy located in Maine or New Hampshire from Jan. 2, 2014 until June 30, 2016; and

3. PDX and/or Accounts Receivable Data relating to all transactions involving a cash-paying or uninsured customer at any Walgreens pharmacy located in Maine or New Hampshire from Jan. 2, 2014 until June 30, 2016.

Subpoena, dkt. 10-1. The subpoena was served on Walgreens's registered agent in Illinois on August 16, 2018.

By letter dated August 27, 2018, Walgreens notified Health Options that it would not produce the information requested in the subpoena and it would not send a corporate representative to the arbitration hearing absent a court order.

3

OPINION

**I. Legal Framework**

Health Options brings this petition under § 7 of the Federal Arbitration Act, which authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. FAA Section 7 states that an arbitrator's summons "shall be served in the same manner as subpoenas to appear and testify before the court." 9 U.S.C. § 7. Section 7 also provides that the district court in the district in which the arbitrators are sitting may enforce such a summons by compelling attendance or punishing a non-attendee for contempt "in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." *Id.*[1] Thus, a district court's order to enforce an arbitral subpoena is co-extensive with its power to enforce any subpoena issued by the court, including the limitations of Fed. R. Civ. P. 45. *See Alliance Healthcare Servs., Inc. v. Argonaut Private Equity, LLC*, 804 F. Supp. 2d 808, 811 (N.D. Ill. 2011) ("The express terms of FAA section 7 limit this Court's enforcement authority to the authority it has under existing law. That authority is limited to the power conferred by Rule 45; there is no other rule or statutory provision that applies in this case.")

---

[1] The district court proceedings involving these enforcement petitions are generally known as "independent proceedings." *Amgen, Inc. v. Kidney Ctr. of Delaware Cty., Ltd.*, 95 F.3d 562, 565–66 (7th Cir. 1996).

Although this is not entirely clear from the FAA or case law, the parties agree that this court must have personal jurisdiction over Walgreens in order to enforce the arbitral subpoena. *See Leibovitch v. Islamic Republic of Iran*, 852 F. 3d 687, 689 (7th Cir. 2017) (rejecting argument that personal jurisdiction irrelevant for nonparty subpoena under Rule 45); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 (2d Cir. 2014) ("A district court . . . must have personal jurisdiction over a nonparty to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45."); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) (enforcement of subpoena must "comport with due process" including the "assertion of personal jurisdiction"); *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (recognizing in Rule 45 context "[t]he principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary, and cases have noted the problem this creates for the prospect of transferring nonparty discovery disputes"); *In re Application to Enforce Admin. Subpoenas*, 87 F.3d 413, 418 (10th Cir. 1996) (nonparty target of administrative agency subpoena must have minimum contacts); *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1281 (7th Cir. 1990) ("A court or agency in the United States, when authorized by statute or rule of court, may order a person subject to its jurisdiction to produce documents, objects, or other information relevant to an action or investigation[.]") (citation omitted); *see also* 16 Moore's Federal Practice § 108.125 (3d ed. 2003) ("A nonparty witness cannot be compelled to testify at a trial, hearing, or deposition unless the witness is subject to the personal jurisdiction of the court.").

## II. Rule 45

Rule 45 allows a subpoena to command attendance at a hearing "within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" Fed. R. Civ. P. 45(c)(1)(A).[2] A subpoena to produce documents is subject to the same geographic limit. Fed. R. Civ. P. 45(c)(2)(A). Walgreens insists that the arbitral subpoena is unenforceable under Rule 45 because Walgreens resides and "regularly transacts business" at its headquarters in Deerfield, Illinois, which is more than a 100-mile drive from Madison. Health Options, on the other hand, argues that Walgreens's headquarters is located less than 100 miles from Madison, so long as the court calculates the distance "as the crow flies," that is, by measuring a straight line between the relevant locations. (The subpoena does not specify a street address in Madison because the exact location of the arbitration has not yet been determined. *See* dkt. 10-1).

Although the case law is sparse, courts have accepted Health Options's proposed method of measuring 100 miles. *See Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 728 n. 5 (E.D. Wis. 2008) (proper measurement under Rule 45 is "as the crow flies"); *Hill v. Equitable Bank, Nat. Ass'n*, 115 F.R.D. 184, 186 (D. Del. 1987) (same); *SCM Corp. v. Xerox Corp.*, 76 F.R.D. 214, 215–16 (D. Conn. 1977) (same). As the court reasoned in *SCM Corp.*, the advantages of using a straight-line distance calculation over driving distance are threefold: (1) it modestly expands the reach of civil trial subpoenas, thus promoting the favored policy of affording the trier an opportunity to hear witnesses in person; (2) it avoids trivial disputes over the ordinary, usual, and shortest routes of travel; and (3) it eliminates the anomaly that would

---

[2] Although the subpoena is directed simply to "Walgreen Co." Walgreens points out that a "flesh-and-blood human being" will have to travel from Walgreens's headquarters in Deerfield, Illinois to Madison in order for Walgreens to comply with it.

otherwise exist of a plaintiff's being able to sue a person within 100 air miles of the courthouse, but not being able to present that defendant's live testimony to the trier when the defendant lives more than 100 travel miles away. *SCM Corp.*, 76 F.R.D. at 215–16. This reasoning is persuasive, and Walgreens cites no contrary authority holding that Congress intended courts to use the driving distance rather than the straight-line distance when applying Rule 45.

Even so, says Walgreens, the straight line distance between its headquarters in Illinois and Madison is more than 100 miles. By Walgreens's calculation, the distance between these points is 100.41 miles— 722 yards over the geographic limit. It's unclear why Walgreens thinks it's worthwhile to quibble over a few city blocks, but in any case, the subpoena says only that the hearing will take place in "Madison." There are many locations in Madison that are within 100 miles of Walgreens's headquarters, including this courthouse, which is within 99.97 miles. *See* Https://www.mapdevelopers.com/distance_from_to.php. Health Options suggests designating a specific location in Madison that is within the 100-mile distance or to consider allowing Walgreens's witnesses to appear telephonically.[3] Accepting Health Options's suggestion, the court finds that the challenged subpoena complies with Rule 45.

## III. Personal Jurisdiction

As noted above, a federal court must have personal jurisdiction over a nonparty in order to enforce a subpoena issued within that jurisdiction. There are two types of jurisdiction:

---

[3] It appears that when the generic "Madison, WI" is used as an input for the on-line distance calculators, the tools will measure from the approximate center of the city, or perhaps the State Capitol. *See, e.g.*, https://www.mapdevelopers.com/distance (calculating distance from 2 East Main Street in Madison, WI to 200 Wilmot Road in Deerfield, IL to be 99.82 miles.)

general and specific. *Daimler v. AG v. Bauman*, 571 U.S. 117, 127-28 (2014). Health Options appears to concede that this court cannot exercise general jurisdiction over Walgreens, which is not incorporated in Wisconsin and does not have its principal place of business in Wisconsin. *See Daimler*, 571 U.S. at 137 (assertion of general jurisdiction typically limited to corporation's place of incorporation and principal place of business). Instead, Health Options asks this court to exercise specific jurisdiction, which requires a plaintiff to show that the controversy between the parties "arises out of the forum-related activity." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). The exercise of specific jurisdiction over an out-of-state defendant is proper if the defendant has "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

To establish the requisite minimum contacts, Health Options relies on Wisconsin's long-arm statute, specifically Wis. Stat. § 801.05(3), which allows the exercise of personal jurisdiction for "any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Although Health Options and its members are not Wisconsin residents, Health Options alleges that it was injured by virtue of Walgreens's acts in Wisconsin, namely, its submission of inflated U&C prices to Navitus that Navitus in turn used to calculate the amount of reimbursement owed to it by Health Options.

A sufficient link exists between Walgreens's suit-related in-state activities and Health Options's alleged injuries to warrant the exercise of personal jurisdiction over Walgreens. As Health Options points out, injury through mail or electronic communications can satisfy Wis.

Stat. § 801.05(3) when they are "part of the wrongful conduct that forms the basis of the claim." *Felland v. Clifton*, 682 F.3d 665, 679 (7th Cir. 2012).  Here, Health Options's cause of action arises at least in part from the specific contacts between Walgreens and Navitus, which is located in Wisconsin.  Put another way, Walgreens's purposely-directed communications to Navitus in Wisconsin of allegedly inflated U&C pricing is "part of the wrongful conduct" that forms the basis of Health Options's claims against Navitus.

In reaching this conclusion, I have followed the parties' lead and assumed that the traditional minimum-contacts inquiry applies even though the question before the court involves third-party discovery.  As others have recognized, however, this inquiry is not ideal because "[a] nonparty, by definition, does not possess the precise contacts with the forum that gave rise to the cause of action—if anyone, only the defendant does." Ryan W. Scott, Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery, 88 Minn. L. Rev. 968, 1005 (2004).  Thus, in the nonparty discovery context, the Seventh Circuit and at least two other circuits have focused more narrowly on the relationship between the nonparty's contacts with the forum and the discovery request at issue.  *See Leibovitch*, 852 F.3d at 690 (district court can have specific jurisdiction over a third party if the party's activities within the jurisdiction of the court "are closely related to the lawsuit or [ . . . ] to subpoenas . . . issued within that jurisdiction."); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (suggesting that lower court should assess "connection between the nonparty's contacts with the forum and the order at issue" in deciding whether to exercise specific jurisdiction over nonparty); *S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (court's exercise of specific jurisdiction was proper where subpoena enforcement action arose out of nonparty's contacts with the forum).

Examining that connection in this case, the arbitration subpoena is closely related to Walgreens's activities in Wisconsin. Walgreens's forum-related conduct consists of submitting U&C charges to Navitus, a pharmacy benefit manager located in Wisconsin, which Navitus in turn used to calculate Health Options's reimbursement amounts. Health Options claims that Walgreens concealed critical data from Navitus that would have shown that its U&C prices were inflated, and the arbitration subpoena seeks to discover that data. This is a sufficient link between the subpoena and Walgreens's activities in Wisconsin to establish personal jurisdiction.

Moreover, assertion of specific personal jurisdiction over Walgreens comports with due process requirements. As noted previously, the key issue for constitutional purposes is whether the defendant has sufficient minimum contacts with the forum state such that "the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Int'l Shoe*, 326 U.S. at 316). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Walgreens contracted with Navitus, a Wisconsin-based company, to join Navitus's pharmacy network. It reports pricing data, including the U&C prices at issue in this lawsuit, to Navitus on a regular basis. According to Health Options, Walgreens has an agreement with Navitus under which it agreed to maintain its electronic records for audit by Navitus and to arbitrate disputes with Navitus in Wisconsin. Given that Walgreens purposely availed itself of the opportunity to do business with a Wisconsin company and to communicate with that

company on a regular basis, it should reasonably have expected that it could be haled into a Wisconsin court. The due process requirements are satisfied.

In sum, this court may exercise specific personal jurisdiction over Walgreens and enforce the arbitration subpoena.

## IV. Costs of Compliance

Finally, Walgreens argues that complying with the arbitration subpoena will be burdensome and expensive given the breadth and scope of the information sought; accordingly, it asks this court to order Health Options to pay Walgreens's compliance costs up front. In response, Health Options insists that Walgreens's objection about the costs of compliance is a matter for the arbitration panel, not this court.

I share Walgreens's view that this court's enforcement duties under Section 7 of the FAA include protecting a person ordered to comply with an arbitration subpoena from undue expense, *see* Fed. R. Civ. P. 45(d)(1) (directing court to enforce party's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"). Even so, it is unnecessary to resolve this dispute at this juncture. Walgreens's general arguments about burden aside, it has not presented anything to show that producing the documents will *in fact* be unduly burdensome. Walgreens argues that the subpoenaed data is overly broad because it seeks information about customers unrelated to the case, but this goes to materiality, which is a matter for the arbitration panel. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000) (district court should not make independent assessment of materiality of the information sought before acting to compel compliance with the arbitration panel's subpoena).

As for cost, Walgreens has not provided an estimate, except to say that it will be "significant." This is too vague to support any order from this court directing Health Options to pay the costs of compliance, much less to pay up front.

ORDER

IT IS ORDERED THAT the motion of Maine Community Health Options for enforcement of the subpoena issued by the arbitration panel to Walgreen Co. commanding it to appear at an arbitration hearing in Madison, dkt. 9, is GRANTED, on the condition that the location of the hearing be within 100 miles "as the crow flies" from Walgreens's headquarters in Deerfield, Illinois.

Entered this 20th day of December, 2018.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge